**In re Benson J. FISCHER, Debtor.**

**Roger Schlossberg, Chapter 7 Trustee, Plaintiff,**

v.

**Benson J. Fischer, Defendant.**

**Bankruptcy No. 03–13704–NA. Adversary No. 03–01222.**

United States Bankruptcy Court, D. Maryland.

April 11, 2006.

Richard B. Rosenblatt, The Law Offices of Richard B. Rosenblatt, Rockville, MD, for Debtor.

*SUPPLEMENTAL DECISION RE MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE CLAIMS RELATING TO THE ATKINS LITIGATION*

S. MARTIN TEEL, JR., Bankruptcy Judge.

The plaintiff, Roger Schlossberg, is the trustee in the case of the debtor, Benson J.

Fischer, under chapter 7 of the Bankruptcy Code (11 U.S.C.). His complaint in this adversary proceeding seeks to deny Fischer a discharge under 11 U.S.C. §§ 727(a)(2), (3), (4)(A), (4)(D), and (5). The only claim not yet tried is the claim relating to the so-called "Atkins litigation," a civil action Leslie Atkins brought in the United States District Court for the District of Columbia asserting claims (including copyright claims) based on a logo and label designed by Atkins for a product devised by Fischer known as "Redneck Beer." Atkins asserted the claims against Fischer, The Fischer Organization, Inc. ("Fischer Organization"), which contracted with Atkins to use her designs, and Fischer Brewing, Inc. ("Fischer Brewing"), which manufactured Redneck Beer using the designs.

Schlossberg's pretrial memorandum, as clarified by the trustee's opposition to Fischer's motion for partial summary judgment, has raised three claims relating to the Atkins litigation, which may be summarized as follows. First, Fischer committed a false oath, justifying denial of a discharge under § 727(a)(4), and concealed an asset of the estate from Schlossberg, justifying denial of a discharge under § 727(a)(2)(B), by failing to schedule a counterclaim he believed he had against Atkins. Second, Fischer did not reveal a malpractice claim he had against his counsel for stipulating to the dismissal of the defendants' counterclaims. Third, Fischer concealed property of the estate, justifying denial of a discharge under § 727(a)(2)(B), by attempting to structure a settlement in the Atkins litigation that provided for $20,000 to be paid to the Fischer Organization (an entity Fischer claims is owned by Fischer and his wife as tenants by the entirety) instead of to Fischer Brewing (a company whose shares are property of the estate) based on rights belonging to (according to Schlossberg) Fischer Brewing.

Fischer has moved for summary judgment with respect to all three claims.

■ The court denied summary judgment as to the § 727(a)(4) branch of the first claim in an oral decision rendered on April 10, 2006. Viewing the evidence in the light most favorable to Schlossberg, the court was compelled to conclude that Fischer believed when he signed his schedules that he had a counterclaim against Atkins, yet deliberately did not schedule that counterclaim. A deliberate failure to schedule a counterclaim further supports an inference that Fischer intended to defraud the estate. That the counterclaim had in actuality been dismissed with prejudice by the district court (pursuant to an order that was not appealed once final judgment was entered on November 30, 2001, long before the bankruptcy case was commenced in 2003) is irrelevant: Fischer made a false oath by stating that he believed that his schedules were accurate. Moreover, the debtor's false oath was material because (1) Fischer believed that the counterclaim held value at the time, which he could use as leverage in settlement negotiations with his insurer and Atkins, and (2) Schlossberg would need to investigate whether such a counterclaim had any value for the estate.

■ However, summary judgment is appropriate as to the § 727(a)(2) branch of the first claim. Because Fischer's counterclaim had been dismissed pursuant to an order that became final upon entry of a final judgment on November 30, 2001, no counterclaim existed that was property of the estate. Therefore, § 727(a)(2)(B) does not apply.

■ Two of the counterclaims asserted in the Atkins litigation were made only by Fischer Brewing. The debtor scheduled the shares of stock of Fischer Brewing as being solely owned by him. He had no

obligation to schedule Fischer Brewing's counterclaims. Failure to schedule those counterclaims does not form a basis for denying a discharge (except to the extent Fischer thought the counterclaims were his and he failed to schedule them).

Consequently, this court granted summary judgment as to the second claim. The two corporate defendants might have a claim against their former counsel for stipulating to the dismissal of their counterclaims without authorization, but Fischer would not. His counterclaim was dismissed pursuant to a motion to dismiss filed by Atkins.

The court granted summary judgment in its oral ruling as to the third claim regarding concealment of property of the estate incident to the parties' securing a settlement in the Atkins litigation. In settlement negotiations in the Atkins litigation, Atkins insisted on addressing not only her monetary claims against the defendants, but also insisted upon an injunction against use of her copyrighted materials, which effectively required a release by the defendants of any implied non-exclusive license to use Atkins' copyrighted materials. Schimel Affi. ¶¶ 38–40.

With respect to Schlossberg's third claim, the estate's interest in any such license is the only thing that Schlossberg has identified as being concealed property of the estate. Schlossberg has not shown that the counterclaims of the defendants in the Atkins litigation were property of the estate concealed in the settlement negotiations. By the time of those negotiations, Fischer had learned that his counterclaim and the counterclaims of the Fischer Organization and Fischer Brewing had been dismissed, and had decided not to attempt to pursue those counterclaims.[1] Schlossberg has proffered no evidence to rebut the affidavits in support of Fischer's motion, which make clear that the counterclaims were not a basis for bargaining for receipt of anything in the settlement negotiations.

The alleged implied non-exclusive license became a bargaining chip in the settlement negotiations. Erie Insurance Company ("Erie") provided legal representation in the Atkins litigation to Fischer and Fischer Brewing pursuant to an insurance policy held by Fischer Brewing. Erie was responsible for paying, within policy limits, any judgment recovered against Fischer and Fischer Brewing. Erie was agreeable to paying $58,000 to Atkins for a release of her monetary claims. The difficulty was that the Fischer Organization was in a position to block any settlement by refusing to consent to a release of any license it might have had to use Atkins' copyrighted materials.

The Fischer Organization took the position that if any such license existed, it belonged to the Fischer Organization (as it was that entity that entered into the contract with Atkins). Richard E. Schimel, as attorney for the Fischer Organization, negotiated a tentative settlement with Erie that the Fischer Organization would agree to the $58,000 settlement with Atkins, including the injunction Atkins wanted, so long as Erie would pay $20,000 to the

---

1. The counterclaims of the two corporations were dismissed by a stipulation. Fischer's affidavit filed with the district court in July 2004 recited that he had never authorized the voluntary dismissal of his counterclaim. (Apparently Fischer was under the impression that all of the counterclaims had been dismissed by stipulation.) An examination of the district court file reveals that the affidavit was filed in response to a contention by Atkins that despite the dismissals of the counterclaims, "Mr. Schimel falsely claimed that there existed counter-claims against Plaintiff in this case which Mr. Fischer wished to pursue." The affidavit was not filed as an attempt to reinstate the counterclaims.

Fischer Organization in exchange for the Fischer Organization releasing its license. Schimel Affi. ¶ 42. Schimel notified Schlossberg's counsel, Karen Moore, that a settlement was being reached and requested her to participate in the settlement negotiations. Moore, participating by telephone, refused to agree to the settlement on behalf of Schlossberg, and asserted that Schlossberg was entitled to any compensation for giving up any license,[2] and she refused to agree to the funds being deposited in the registry of the district court for later resolution of the rightful owner.

The other parties, with Moore absent, proceeded to enter into an agreement for $58,000 to be paid Atkins, and for entry of the injunctive relief Atkins sought, and Erie and the Fischer Organization agreed that incident to the defendants agreeing to that settlement, $20,000 from Erie would be placed in the registry of the district court (the Fischer Organization having persuaded Erie to increase the $15,000 amount previously mentioned to $20,000). The agreement with Erie specified that the $20,000 was in exchange for release by the Fischer Organization of any license, preserving the right of Schlossberg to claim that the $20,000 should be paid to him.

■ These facts do not make out a § 727(a)(2)(B) claim. The Fischer Organization was represented by separate counsel and was entitled to negotiate whatever terms it viewed as favorable to it. Fischer Brewing (whose shares are owned by Schlossberg as property of the estate and who Schlossberg concedes has been managed by him since at least October 2005)

was represented by separate counsel, and Schlossberg was free to direct that counsel not to enter into the settlement.

Schlossberg has presented no evidence that Fischer attempted to direct Fischer Brewing's counsel in how Fischer Brewing, through that counsel, proceeded to settle the Atkins litigation, and the evidence demonstrates that the $20,000 payment term was squeezed out of Erie by the Fischer Organization. Schlossberg's counsel was promptly notified of the settlement and could have taken steps to set it aside as an unauthorized act on behalf of Fischer Brewing (as he had removed prior management and made himself management of Fischer Brewing). At least at this juncture, Schlossberg has not attempted to set aside the settlement other than to assert that Fischer Brewing, not the Fischer Organization, had any ability to assert an implied non-exclusive license to use Atkins' designs and thus should receive the $20,000 Erie paid for release of that license.

In its oral decision, the court ruled that any harm to Fischer Brewing was not harm directly to the estate. The court concluded that Fischer Brewing, but not the bankruptcy estate, owned any right to compensation for any license rights that it held and that Fischer Brewing held any right to sue Fischer for any interference with its right to such compensation.

■ The court noted in its oral ruling that Schlossberg had not stated in his pretrial memorandum that grounds exist for disregarding the corporate form. The court retracts that ruling as unnecessary. Fischer Brewing is no longer an operating

---

2. Schlossberg takes the position that if any party held such a license, it was Fischer Brewing because the Fischer Organization entered into the contract with Atkins for the purpose of facilitating the eventual marketing of Redneck Beer by the entity later formed to engage in such marketing, Fischer Brewing. Thus, Schlossberg contends, any payment for such a license owned by Fischer Brewing should come to Schlossberg as the sole shareholder and management of Fischer Brewing.

company, and in effect Schlossberg holds its claims as property of the estate, such that viewing the evidence in the light most favorable to Schlossberg it might be appropriate to view any license rights of Fischer Brewing to constitute property of the estate.

But this retraction does not alter the court's conclusion with respect to Schlossberg's third claim. Once Schlossberg assumed ownership of Fischer Brewing and displaced Fischer as president and CEO of the company, he became responsible for protecting Fischer Brewing's assets, including its interest (if any) in the designs of Atkins. The actions taken by the Fischer Organization in pursuit of its own best interests do not implicate Fischer personally for purposes of § 727, and even if they did, those actions (by Fischer through the Fischer Organization) do not constitute a "transfer[ ], remov[al], destr[uction], mutilat[ion], or conceal[ment]" of assets of the estate as required to bar the entry of discharge under § 727(a)(2).